COWART, Judge.
This is an appeal from an order in a probate action removing a personal representative.
In 1976 Dorothy Waldon died intestate leaving a house then valued at $12,700 and a car then valued at $500 and essentially no debts. Mrs. Waldon’s heirs consisted of her *95 four children, one of which, Blanche 0. Ray, was appointed personal representative of the decedent’s estate. The personal representative petitioned to mortgage the house to borrow the funds necessary to make $3,500 of repairs to the house, which repairs were authorized by the other heirs. The court entered an order permitting this. On May 17, 1978, after the estate had been opened more than twelve months, the probate court ordered the estate to be closed without further delay. Fla.R.P. & G.P. 5.400(b). The probate court on September 27,1978, extended for four months the time to close the estate. To this point the estate proceedings consisted of 23 pages of the 187 page record on appeal.
On July 16, 1979, Blanche O. Ray filed a voluntary petition in bankruptcy. Appellee was appointed trustee and being vested by operation of law with the title of the bankrupt heir, the trustee was permitted to intervene in the estate proceedings. Then the trouble began. The trustee moved to require an accounting and for the estate to be closed. On January 22,1980, a non-taxable certificate was filed and the probate court entered another order to close the estate. The heirs, including Blanche Ray, waived final accounting and consented to the discharge of the personal representative. The trustee objected, primarily because of some remark at a hearing that Blanche had waived her right to charge a personal representatives fee and the trustee wanted that fee and wanted to be sure that Blanche’s interest in the estate was distributed to the trustee. Blanche filed a final accounting that showed receipts from a $5,700 mortgage loan on May, 1977, plus $1,600 resulting from a modification of the mortgage on October, 1978, and an additional $7,052.72 as a result of a modification of the mortgage in June of 1979. This total of $14,352.72 was accounted for, with all but $68.19 having been expended for costs of probate, repairs to the house and loans to the heirs. The trustee objected to the final accounting. Blanche petitioned for discharge proposing a distribution of assets to the four heirs. An order was entered directing a distribution to the trustee of all disbursements that Blanche O. Ray would be entitled to under the will[1] of Dorothy O. Waldon. Another order entered at the trustee’s behest directed the personal representative to attempt to recover the monies loaned to the heirs. The trustee then amended the objection to the final accounting to request that rent be fixed and collected from one of the heirs who occupied the house. The trustee then petitioned to remove the personal representative because she had borrowed the $14,352.72 rather than the authorized $3,500, had delivered some of the borrowed funds to heirs without court approval, had taken no steps to recover said funds from the heirs, and had let the one heir occupy the house without paying rent. The trustee also petitioned the probate court to partition the house for the purpose of distribution. Fla.R.P. & G.P. 5.390, § 733.814, Fla.Stat. (1981). Blanche filed an amended final accounting which actually only argued that the final accounting previously filed was in error in that the mortgage loans had not been made to the estate under court order but had been made to the heirs themselves without obligating the estate. By order dated May 20, 1981, the court removed Blanche as personal representative and appointed the trustee in bankruptcy as personal representative and adjudicated that the trustee was entitled to receive Blanche’s share of the real estate free and clear of all liens including that of the institution that made the mortgage loan totaling $14,352.72, except for $4,923.27 previously approved by the court. The trustee, acting as personal representative, filed a second amended petition to partition alleging a plan to have the house sold to increase the marketability of the trustee’s one-fourth interest in the house and so that the money from such sale would go through the estate and be so distributed that only one-fourth of the $4,923.27 would be deducted from the trustee’s one-fourth interest in the gross sales price of the house (rather than *96 distributing the house in kind which would result in the trustee’s one-fourth interest being subject to the outstanding balance due on the $14,352.72 mortgage lien). The trustee-personal representative, an attorney, also applied for a fee of $5,445 for services as attorney for the personal representative.
The heirs appeal the May 20, 1981, order, removing Blanche as personal representative and adjudicating that the trustee was entitled to Blanche’s share of the estate subject only to a proportionate share of the $4,923.27. We reverse.
When Dorothy Waldon died intestate[2] in 1976, the title to her property descended to her heirs, being her four children, subject to existing liens, encumbrances, defects, and the administration of her estate by the personal representative.[3] The personal representative has limited rights to possession of, and power over the title to, the property of a decedent. If necessary for purposes of administration, the personal representative has a right to possession and control of the decedent’s property, except the homestead. § 733.607, Fla.Stat. (1981). The powers of the representative over the property of the estate are limited. § 733.612, Fla.Stat. (1981). In the absence of a will, the personal representative possesses the estate property only for the purposes of payment of debts; family allowances; estate and inheritance taxes; claims, charges and expenses of administration; to enforce contributions; to equalize advances; and for distribution. § 733.608, Fla.Stat. (1981). The personal representative does have certain powers of distribution. See §§ 733.608(3), 733.612(26), and 733.810, Fla.Stat. (1981).
As stated above, the title to the property of an intestate decedent passes at death directly to the heirs subject to the administration of the estate. Actually in legal contemplation this can be likened to the common law concept of an estate vesting subject to possible divestment in that the inherited title of the heirs is, during the administration of the estate, defeasible if it is necessary for the property to be sold by the personal representative for any proper purpose such as to raise money for the payment of debts and taxes, the costs of administration or for distribution as contemplated by sections 733.810(l)(b) and 733.813, Fla.Stat. (1981). However, the limitation on the heirs’ inherited title as it relates to the personal representative’s powers relating to distribution, is itself somewhat limited for two reasons. First, it is the policy of the law that the distributable assets of an estate be distributed in kind. § 733.810(1), Fla.Stat. (1981). Secondly, since the heirs have already inherited the title, the distribution to them is not of the title but is of the personal representative’s rights and is legally more in the nature of a formal termination of the possession and power of divestment that exists in the personal representative during administration. Since the entry of an order discharging the personal representative is also a formal termination of those same rights of possession and power, it effectively constitutes a “distribution” to the heirs in keeping with the title that descended to them in the manner provided by law.[4] However, cautious title lawyers consider it the better practice for the personal representative to petition to authorize distribution and, pursuant to court order, to execute a deed or other formal instrument of distribution purporting to transfer specific property to the heirs. While not legally necessary in order for the heirs’ inherited title to be freed of the potential divestment for estate administration purposes, such an instrument may *97 constitute “conclusive evidence” and give distributees and their purchasers and lenders some added benefits under sections 733.-811 and 733.813, Fla.Stat. (1981).[5]
In any event, this was a small, simple estate with no problems involving debts or estate taxes and it should have long ago been closed and should not have been subjected to the ravages of the trustee in bankruptcy attempting to secure an advantage over the co-heirs of the bankrupt heir in and through the administration of the estate. After the decedent’s death, her heirs had a title that they could convey or encumber. Here, as clearly shown by the record, the four heirs of the decedent actually personally borrowed the $14,352.72 and secured that loan with personal notes and by personally executing a mortgage against their inherited title. To the extent the title to the property was encumbered with the approval of the probate court to raise money for proper estate purposes, the mortgagee’s lien would not only be good against the heirs but also good against the personal representative and persons interested in the estate, including creditors. To the extent the heirs convey or encumber their title without properly clearing it through the estate proceedings, the title and liens of purchasers and lienors claiming through the heirs continue to be subject to the power of the personal representative of the estate to divest them of such title for proper purposes of administration of the estate just as the personal representative could do with respect to the heirs’ rights. Therefore heirs do not injure the estate or persons interested in the estate by selling or encumbering their own title. Regardless of the fact that the mortgaged title may have, in part, continued to be subject to the administration of the decedent’s estate and regardless of the fact that the heirs may have let Blanche distribute the loan proceeds and that some of the proceeds were used to pay costs of administration and that Blanche erroneously reported those proceeds as receipts by her as personal representative, in law and in fact the borrowed monies were the heirs own personal funds. The whole borrowing business and Blanche’s failure to recover the loan proceeds distributed directly to the heirs without court authority were not proper grounds upon which to remove her as personal representative and the appealed order is reversed and the cause remanded with directions to forthwith close this estate.[6]
REVERSED AND REMANDED WITH INSTRUCTIONS.
COBB and SHARP, JJ., concur.

. This was an intestate estate and this reference to the will of Dorothy O. Waldon is but one of many errors revealed by a careful review of this probate proceeding.

. Title to property of a testate decedent is different because a will constitutes a muniment of title as to devised property.

. The estate of a decedent is not an entity that receives the title and passes it on to the heirs or devisees if not conveyed to others for other purposes during administration. Section 732.-101(2), Florida Statutes, provides: “The decedent’s death is the event that vests the heirs’ right to intestate property.” The term “right to property” means title. See Grobard v. Grobard, 382 So.2d 117 (Fla. 3d DCA 1980).

.See §§ 732.102, 732.103 and 732.401, Fla. Stat. (1981).

. Such deeds of distribution may also benefit the record title as the basis for limitations (see §§ 95.22 and 95.231, Fla.Stat. (1981)). Carefully worded recitals of facts relating to heirship inserted in such deeds can also become admissible and prima facie evidence of essential facts. See § 90.803(14), (15) and (16), Fla.Stat. (1981).

. We note that the last mortgage loan modification which resulted in loan proceeds of $6,447.28 was made before, and recorded on, June 25, 1979, several weeks before Blanche filed her voluntary petition in bankruptcy. Under section 70 of the bankruptcy act (11 U.S.C. § 110) the trustee in bankruptcy was vested by operation of law with the title of the bankrupt as of the date of the filing of the petition and apparently took her inherited interest subject to the mortgage encumbrance that she had placed against it. If the trustee desires to attack the validity of the mortgage he has ample methods and remedies but not in the probate proceeding. In this particular case, if the trustee desires partition, he should proceed by a separate action under chapter 64, Florida Statutes, rather than under section 733.814, Florida Statutes, which will but further delay the closing of this estate.